[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This court had heard over twenty-five trial days of this case. The record shows hundreds of exhibits and the possibility of over a thousand pages of transcript. The record indicates that this action began in April of 1990 with decisions rendered by two other Superior Court family judges CT Page 1203 prior to this court's ruling of May 19, 1993 on the matters of child support and alimony.
In rendering this decision this court has reviewed the record extensively, has appraised the evidence introduced at trial and the testimony of the numerous witnesses. This court has also taken into consideration all statutory criteria applicable under our family law statutes and practice book requirements.
BASIC FINDINGS OF FACT
The parties were intermarried on May 19, 1962 at New Britain, Connecticut. Both parties have resided continuously in the State of Connecticut and satisfy the one year jurisdictional requirement. There are three minor children issue of the marriage:
Lana Manafort, November 16, 1976
William Manafort, March 21, 1978
Liza Manafort, October 31, 1979
No state or local municipality is contributing to the support of the parties.
PARTIES STATION IN LIFE
The record shows that the plaintiff wife has basically worked in the home bringing up the children of the marriage. This court finds that the plaintiff's domain was primarily in the home. By choice, the defendant husband worked in the family business and purposely left the plaintiff out of any real decisions affecting the business. At no time did he give her sufficient financial information to understand where the business was financially or the ability to join in any of the planning functions of future business decisions. The defendant, when he needed the plaintiff's signature on business documents including mortgages, taxes, etc., basically thrusted the documents at the plaintiff and expected immediate compliance.
MARITAL BREAKDOWN CT Page 1204
In any long term relationship each side can usually muster a carload of neatly packaged incidents that are portrayed as the cause of the marital breakdown. This case proved no exception. However, in assessing the relationship, this court finds that the defendant is more responsible for the cause of the breakdown of the marriage. The combination of the defendant's quicksilver temper, and his penchant for booze and women, caused the breakdown of the marriage.
DEFENDANT'S ACTUAL INCOME
Most of this case (as would be expected) centered around the twin issues of what is the actual income of the defendant and the value of his various business entities. For the record, the various corporate structures that are subject to this court's decision are:
1. MANAFORT BROTHERS, INC.
(Demolition, Site Development)
2. CONNECTICUT WASTE PROCESSING
 (Container rental business, recycling pick-up route, commercial trash hauling route, operate New Britain Waste Transfer Station)
3. DEL-VA CORPORATION
(Non-Union subcontractor)
 Defendant is 33.3% owner of each of the above entities.
4. MANAFORT BROTHERS ASSOCIATES
 This is a holding company for the following properties:
 (Dumpsite: Pond #1 and #2, Dumpsite: Pond #3, Receivable: N/R's — Trusts, Corporate Headquarters: 141 New Britain Ave., Home: Delray Beach Florida, Land: E. Hampton Not Developable, 2 Colonial Investments: Cheshire Limited; Executive Limited, Fredericks: Dissolved, 333 Christian Lane — CT Page 1205 Colonial House, 339 Christian Lane — Ranch House, 351 Christian Lane — Ranch House, Land: Palm Beach, Florida, Land: 2 Lots Bahamas (Formerly Family Realty).
The defendant owns 38% of these entities.
5. CONNECTICUT RECYCLING AND PROCESSING, INC.
 (General Partner Holding Company a 10% general partner)
6. CONNECTICUT RECYCLING AND PROCESSING LIMITED
 (A limited partnership that the crushing operations operate under. Manafort Family Limited Partnership, Limited — a 90% limited partnership)
7. MANAFORT FAMILY LIMITED PARTNERSHIP
 (15% general partners in which the defendant owns 5% The remaining 85% is in irrevocable trusts in which the defendant family is a 28.3% share owner. This entity controls property called the Pickney Avenue Development Sites or "Oatmeal Lot" plus an option for a landfill site in Hartford, plus 90% of Crp. Ltd.).
Establishing the defendant's true income for the sake of this divorce has been a monumental undertaking. It is the plaintiff's claim that this court take into consideration the defendant's "net income, as disclosed on the defendant's tax returns after payment of actual income taxes" as the appropriate standard for this court to consider. The plaintiff then invites this court to use a net disposable income rate of $330,000 to $767,000. In bold contrast the defendant maintains that his disposable income is merely $114,000 per year, and asks this court to set its alimony and child support orders from that singular amount.
In reviewing the amounts of the defendant's income, stated on his 1040 submitted to the IRS for the years of 1991 and 1992 respectively, we find an adjusted gross income in 1991 of $775,000 and $397,000 in 1992. It is the defendant's consistent position before this court that the alimony and CT Page 1206 child support payments should be based upon the "spendable" portion of the defendant's income and that the tax statement amounts submitted should be discounted by this court because they are plowed back into the corporate entities. Defendant's second position is that the income generated from the corporations on his tax returns are not in-pocket distributions but money generated by the corporate entities that go to satisfy the tax obligations of the defendant. It has been characterized as "phantom income" by the defendant since it basically is a paper transaction that doesn't add money to the defendant's cash position.
ALIMONY
Having considered all of the evidence as it relates to Sec. 46b-82 C.G.S., and having noted in particular such predominating factors as the length of the marriage, the comparative incomes of the parties, the causes for the dissolution, and the awards previously made pursuant to Sec. 46b-81c C.G.S., this court orders that defendant pay the plaintiff alimony at the rate of One Thousand ($1,000) per week until the defendant husband reaches the age of sixty-five (65). At sixty-five (65), the alimony payment will be lowered to Five Hundred ($500) Dollars per week.
This order shall be non-modifiable as to term only, but shall terminate upon the remarriage of the plaintiff or upon the death of either party.
CHILD SUPPORT
Child support payments shall be in the amount of $200 per week for each child until they reach the age of eighteen. This court finds no arrearages.
CHILDRENS' ACCOUNTS
The present funds in the childrens' accounts of $187,375 shall remain solely the childrens' assets. Neither party shall invade and use those monies for their own personal use.
LIFE INSURANCE
The defendant shall maintain life insurance in the amount of $250,000 with the plaintiff as the sole beneficiary during CT Page 1207 such time as defendant shall be required to pay alimony under the terms of this judgment.
HEALTH INSURANCE
The defendant shall maintain medical insurance for the benefit of the minor children until they are eighteen years of age. The defendant shall pay all unreimbursed medical, dental, prescriptive, psychiatric and psychological and orthodontic expenses of the children.
The defendant shall maintain the current health insurance benefits for the plaintiff for the three year maximum pursuant to COBRA, at his expense.
PAROCHIAL SCHOOL PAYMENTS
The defendant shall be solely responsible for any and all parochial school, which includes grammar and high school, payments on behalf of the minor children.
FAMILY HOME
The plaintiff shall be given the family home located at 141 Warner Road with the lot next door. Plaintiff shall hold defendant harmless with regard to all mortgages, taxes, etc., subsequent to this decision.
LOT 15 RESERVOIR ROAD SUBDIVISION
This so-called Bergenty lot shall be deeded from the plaintiff to the defendant within 14 days of this judgment. Defendant's counsel shall be responsible for the proper paperwork being prepared.
ETC.
The plaintiff shall retain all bank accounts, savings, her IRA, Bank of Boston and MidConn Bank stocks and the 1990 Acura. The defendant shall execute all the necessary paperwork to effectuate this order.
The defendant shall retain the bank accounts, listed on his affidavit of October 18, 1993, his IRA, and life insurance and the 1985 Jaguar, 1989 Jeep Cherokee, two power craft CT Page 1208 boats. The plaintiff shall sign all paperwork necessary to effectuate this order.
LIABILITIES
Each of the parties shall be solely responsible for all liabilities listed on his or her financial affidavit and shall hold the other party harmless in that regard.
PROPERTY DIVISION
As to be expected in this case, the positions of each side on the value of the business properties are vastly different. The defendant has asked this court to leave all the business interests to the defendant and values those assets as a minus $624,000. The plaintiff asks this court to find that the defendant's share of the business to be $3,747,601. The plaintiff proposes that this court order that the defendant sign a note to the plaintiff for $1,950,000 payable within ten years. In order to understand where the differences lie, it is necessary to examine the entities separately. Gratefully, both sides agree that Connecticut Recycling Processing has no value.
VALUATION METHOD
 Manafort Brothers, Inc., 860 shares/Del-Va Corporation 66.6 shares.
Plaintiff's valuation basis:
In assessing the above corporations, the plaintiff's accounting expert used the operating cash flow method and the book value perceptive. Under the cash flow method, the corporation's total worth would be 9.5 million. Under the book value method, the worth of the corporation would be 7.222 million. Mixing those methods of analysis, the plaintiff claims the two entities are worth 7,981,000 with the defendant's share to be $2,660,000.
Defendant's valuation basis:
The defendant's accounting expert urges this court to adopt the New Asset Value ("NAV") approach. "The Net Asset Value method presumes that the Company's value will be CT Page 1209 realized by the hypothetical sale of its assets as part of a going concern." In arriving at the value, the defendant's expert recognizes that the NAV approach is "more appropriate for valuing controlling interest than for minority interest" . . . , he then blends the two claiming the lack of any more appropriate way to accomplish the valuation. The defendant's expert asks this court to find that the defendant's portion of the two corporations is $785,000.
In reviewing the extensive arguments of the accounting experts, this court feels that the plaintiff's value to be too high and the defendant's expert to be too low. This court finds that the value of the defendant's share of the two companies to be $1,000,000. After listening to exhaustive testimony of how these companies have survived the bad times upon us, the doom and gloom scenario portrayed by the defendant is too severe and the everything is roses approach of the plaintiff is not sufficiently probative.
MB Associates: 38% General Partnership.
After testimony by the numerous expert witnesses, the court will find the following values for the properties listed to MB Associates:
 Cash and Equivalents $ 131,588 Accounts Receivable Trade 231,369 Accounts Receivable Trusts 63,800 Christain Lane 333* 140,000 Christain Lane 339* 100,000 Christain Lane 351* 130,000 414 New Britain Ave.* 1,050,000 (*Mortgage on Properties, 1,530,000) (110,000) Land, Berlin Land Fill 650,000 Land, Palm Coast Florida 40,000 Residence Del Ray Beach 121,949 19 Lake Drive, East Hampton 32,000 23 Lake Drive, East Hampton 32,500 Land Bahamas 4,500 Intercompany Loans: Manafort Brothers, Inc. 90,840 Del-Va 105,250 Conn. Waste Processing (26,000) CRP., Ltd. (322,745) CRP., Inc. 5,762 CT Page 1210 MFLP, Ltd. 285,052 Family Trusts 17,335 Accounts Payable (67,443) Security Deposits (2,600) Colonial Investor Obligation 0,000
In finding the above values, this court has examined both of the accounting statements, Plaintiff's Exhibit XXX and Defendant's Exhibit 88.
The value of the landfill is a difficult decision. The financial history of the revenue generated by the landfill shows that it has been extremely productive. During the trial, the defendant argued that the days of the landfill "cash cow" are gone and that the landfill is over capacity and will be a major financial drain to the Manafort enterprises. The evidence introduced was that it would cost $4,958,411 to close the landfill and meet the requirements of the various agencies that govern landfills from the State and Federal government.
This court has decided to include the land costs of the landfill and exclude the projected costs of closing the operation if and until that becomes necessary. If the landfill does incur costs to close it down that are verified by the MB Associates accountants, then 38% of those specific costs shall be deducted from the property settlement owed to the defendant on the pro-rata basis of twelve years.
The court gave a zero amount to the Colonial Realty Limited Partnership as the explanation provided by the plaintiff's accountant was found to be more plausible to this court.
This court finds the MBA Associates' net value to be $1,283,157 of which the defendant is a 38% owner or a value of $487,599.
Connecticut Recycling Processing, Inc. Defendant's share is 33.3% interest. This court gives this entity no value.
CRP Limited Partnership. The property and operations are subject to a 90% controlling interest and a 10% minority interest. The plaintiff places no value to this entity while the defendant's accountant states the fair market value of the CT Page 1211 net assets to be minus $724,520. In defendant's financial affidavit of October 18, 1993, the defendant listed the above entity as having no value. This court will find that there is no value for CRP Ltd.
MANAFORT FAMILY LIMITED PARTNERSHIP (MFLP). This court finds that MFLP has no value. While this court finds no present value, the so-called "oatmeal lots" and adjacent land do have potential for ultimate development. This court awards the plaintiff 50% of any net income after taxes earned by the defendant from this property.
SUMMARY
 Manafort Brothers, Inc. $1,000,000 MB Associates 487,600 ---------- $1,487,600
After carefully reviewing and weighing all of the evidence as it relates to Sec. 46b-81c C.G.S. and often giving particular consideration to such predominating factors as the lack of income of one of the parties, their comparative opportunities for the future acquisition of capital assets and income and to a somewhat lesser degree, the causes for the breakdown of the marriage, this court orders that the marital estate be awarded as follows:
This court awards the plaintiff $743,500 as her share of the property settlement. This is to be paid by the defendant at the rate of $61,958 per year. There will be 4% interest on the unpaid balance. This amount shall be secured by a note by the defendant using his stock ownership in Manafort Brothers, Inc. The first payment is due within 21 days after this decision.
MABON ACCOUNT
It is the order of this court that the defendant transfer $129,468 to the plaintiff within 21 days after this decision from the Mabon account.
PRUDENTIAL BACHE ACCOUNT
This account is subject to a garnishment by Fleet Bank to CT Page 1212 protect a possible judgment in a law suit. If any money of this account is not found to be owed in the suit, any and all monies not utilized shall be split 50/50 between the parties.
INFORMATION EXCHANGE
The parties are to exchange each year their federal and state income tax filings. The defendant shall provide copies of his 1040, 1041, 1065 and any other corporate income tax filing statement connected with the business.
INCOME TAX EXEMPTION
The defendant shall be entitled to claim the minor children as exemptions for state and federal income tax purposes each year.
COUNSEL FEES
The plaintiff is awarded counsel fees in the amount of $67,500. $17,500 is due within forty-five days. The balance is to be paid in two installments with $25,000 due and owing nine months from the initial payment and the second and final payment nine months subsequent.
This court finds that the marriage has broken down irretrievably, dissolution of the marriage is granted.
Norko, J.